# Wynn & Wynn, P.C. *vs.* Massachusetts Commission Against Discrimination & another.[1]

Bristol. February 10, 2000. - June 6, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Administrative Law,* Findings, Judicial review. *Massachusetts Commission Against Discrimination. Practice, Civil,* Jury trial, Retroactivity of judicial holding, Attorney's fees, Costs. *Constitutional Law,* Trial by jury, Retroactivity of judicial holding, Sex discrimination. *Anti-Discrimination Law,* Sex, Employee, Burden of proof. *Employment,* Discrimination. *Limitations, Statute of. Emotional Distress.*

The defendant in an action alleging unlawful gender discrimination in employment was not entitled to the retroactive application of the holding in *Lavelle* v. *Massachusetts Commission Against Discrimination*, 426 Mass. 332 (1997), upon raising the issue in a motion for new trial, where the defendant had failed to assert a jury claim in the case at a time when such a right was sufficiently developed and thus had not properly preserved the issue. [662-664]

Discussion of the three-stage approach to proof of a discrimination claim [664-666] and of the mixed-motive analysis applicable to some discrimination claims [666-667].

This court articulated the analysis to be applied beyond the threshold stage when a mixed-motive framework is invoked in a discrimination case. [668-670]

In the circumstances of a claim of gender discrimination in employment in which the plaintiff demonstrated by direct evidence that discriminatory animus was a factor in the defendant's decision not to hire her, the record of proceedings before a hearing officer of the Massachusetts Commission Against Discrimination supported his conclusion that, although the decision not to offer the plaintiff a position may have resulted "in part" from concerns about her performance, the defendant's actions were motivated primarily by unlawful discriminatory animus. [667-668, 670-671]

Claims of sexual harassment and disparate treatment were not timely filed within the six-month period specified in G. L. c. 151B, § 5, and did not relate back to the filing of the claimant's original discrimination complaint, nor was there any equitable reason to toll the limitations period. [671-673]

In a gender discrimination in employment claim, the hearing officer's award of damages for emotional distress was fully supported by substantial evidence, and the damages were not greatly disproportionate to the injury proved, nor did they represent a miscarriage of justice. [675]

[1]Jill Carmichael.

An award of attorney's fees in a proceeding before the Massachusetts Commission Against Discrimination was reasonable and not an abuse of discretion [675-676], and the commission properly considered attorney's fees billed in quarter-hour increments [676].

A hearing officer of the Massachusetts Commission Against Discrimination did not err in declining to award front pay in an employment discrimination case, where the amount was not reasonably ascertainable. [676-677]

A claimant in a sex discrimination in employment case, prevailing on appeal, was entitled to an award of appellate attorney's fees and costs. [677]


CIVIL ACTION commenced in the Superior Court Department on November 5, 1996.

The case was heard by *Richard J. Chin,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Douglas A. Hale* for the plaintiff.

*Judith Ashton* (*Howard P. Speicher* with her) for Jill Carmichael.

*Jerrold S. Levinsky* (*Christine E. Davio* with him) for Massachusetts Commission Against Discrimination.

*Howard M. Brown,* for Northeast Security, Inc., amicus curiae, submitted a brief.

MARSHALL, C.J. This is an appeal from a judgment of the Superior Court affirming a decision of the Massachusetts Commission Against Discrimination (MCAD or commission) that the law firm of Wynn & Wynn, P.C. (Wynn & Wynn or firm), discriminated against Jill Carmichael on the basis of her sex when it failed to hire her as an associate on her graduation from law school. G. L. c. 151B, § 4 (1).[2] We determine that the judge in the Superior Court correctly concluded that Wynn & Wynn was not entitled to a jury trial. In addition, we conclude that the decision of the commission concerning the discriminatory failure to hire was supported by substantial evidence and was consistent with applicable law. See G. L. c. 30A, § 14 (7). We affirm the judgment in all respects.

---

[2] General Laws c. 151B, § 4 (1), states it shall be an unlawful practice "[f]or an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object, or ancestry of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

On May 18, 1992, Carmichael filed her discrimination complaint with the commission charging Wynn & Wynn with failure to hire her on the basis of her sex. On August 18, 1992, Carmichael alleged additional claims for sexual harassment and disparate treatment while she was employed as a law clerk. On December 1, 1992, the MCAD investigating commissioner found probable cause to credit all of Carmichael's allegations. Conciliation efforts proved unsuccessful, and the matter was certified for a public hearing.

In October and November, 1994, a four-day public hearing was held before an MCAD hearing officer. One year later, on November 16, 1995, the hearing officer issued her findings of fact and conclusions of law. She found in favor of Carmichael on her failure to hire claim, and awarded her damages for lost back wages and for emotional distress.[3] She denied Carmichael's claim for front pay, and dismissed as untimely her claims of sexual harassment and disparate treatment.

Wynn & Wynn appealed to the commission, and Carmichael cross-appealed. On September 30, 1996, the commission affirmed the decision in all respects. The commission also concluded that Carmichael had "prevailed," and awarded her attorney's fees and costs. G. L. c. 151B, § 5.[4]

Wynn & Wynn filed a complaint for judicial review in the Superior Court, challenging the MCAD's ruling that it had failed to hire Carmichael because of her sex, and the award of fees and costs. See G. L. c. 151B, § 6; G. L. c. 30A, § 14. Carmichael filed a counterclaim seeking to set aside so much of the commission's decision as denied her damages for front pay and dismissed her sexual harassment and disparate treatment claims as untimely. In the alternative, Carmichael asked the judge to enforce the decision of the commission, and to award her attorney's fees and costs. Both Wynn & Wynn and the commission moved to dismiss Carmichael's counterclaim as an "appeal" that had not been filed within the requisite thirty-day

---

[3]The hearing officer ordered Wynn & Wynn to pay Carmichael the sum of $51,144 in damages for lost back wages, and $50,000 in damages for emotional distress. She awarded interest on both sums at the statutory rate of twelve per cent from the date that Carmichael filed her complaint, May 18, 1992, until such date as payment is made or postjudgment interest begins to accrue. See G. L. c. 231, § 6B; G. L. c. 235, § 8.

[4]General Laws c. 151B, § 5, states in relevant part that "the commission shall award reasonable attorney's fees and costs to any prevailing complainant."

filing period. See G. L. c. 151B, § 6; G. L. c. 30A, § 14 (1). A Superior Court judge denied their motions. Wynn & Wynn then filed a motion for judgment on the pleadings, as did Carmichael. The judge affirmed all aspects of the commission's decision, and judgment entered on September 12, 1997. Wynn & Wynn and Carmichael filed timely appeals. Carmichael filed a motion for attorney's fees and costs, which the Superior Court judge awarded.[5]

On December 23, 1997, we issued our decision in *Lavelle* v. *Massachusetts Comm'n Against Discrimination*, 426 Mass. 332 (1997), holding that in a discrimination case a respondent has the same right to a jury trial as a complainant after the MCAD has taken final action. On January 9, 1998, Wynn & Wynn moved to set aside the judgment of the Superior Court and for a jury trial, which the judge denied. Wynn & Wynn appealed from that decision. We transferred this case from the Appeals Court on our own motion, and treat the appeals as consolidated.

1. *The commission decision.* Under the State Administrative Procedure Act, we defer to the fact-finding function of the commission where substantial evidence exists to support its findings and there is no error of law. See G. L. c. 30A, § 14 (7); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 133 (1976). The employment decision adverse to Carmichael that the hearing officer concluded was unlawful was made at a meeting in April, 1991, following which Carmichael, then a law student employed as a law clerk at Wynn & Wynn, was told by a managing partner that there were no openings for an associate. We summarize the facts as determined by the hearing officer,[6] supplementing her findings, as appropriate, with facts from the record on appeal.

Carmichael attended New England School of Law as a full-time student from September, 1988, to December, 1991. She passed the Massachusetts bar examination in February, 1992, and was sworn in as an attorney in June, 1992. In November,

[5]Wynn & Wynn has not taken an appeal from that award. It did appeal from the commission's award of attorney's fees and costs to Carmichael, which it presses here.

[6]On appeal from the decision of the hearing officer, the commission reviewed the record of proceedings and concluded that there was substantial evidence to support the hearing officer's detailed findings of fact. See *Katz* v. *Massachusetts Comm'n Against Discrimination*, 365 Mass. 357, 362 (1974); G. L. c. 30A, § 11 (8). The commission did not make separate findings, but deferred to the hearing officer.

1989, while she was a law student, Carmichael obtained a position as a law clerk at Wynn & Wynn in its Fall River office.[7] Carmichael's interview for that position was with Charles Murray, the managing partner of the Fall River office. During the interview she informed Murray that she was married, had a small child, and planned to have additional children in the future.[8] Carmichael was not pregnant at the time: she was not asked to, nor did she, volunteer this information. She was hired and, within a few days, began work as a law clerk. Her second child was born on September 28, 1990, approximately ten months later.

Throughout her tenure as a law clerk, Carmichael worked almost exclusively for William McKeon, an associate, later a partner, on a complex, multi-party litigation case, performing duties in the nature of paralegal work. During the academic year she worked approximately three days a week; during the summers she worked full time. We defer until later discussion the findings concerning Carmichael's allegations of sexual harassment by McKeon. See part 4, *infra.*

In March, 1991, Carmichael asked to meet with Murray to discuss a raise, which Murray authorized; he also agreed to ask any attorneys supervising her to submit written evaluations of her work. Later that month Carmichael told Murray that she wished to be considered for an associate position with Wynn & Wynn on her graduation from law school in December, 1991.[9] He said he would do so.

At Murray's initiative, in April, 1991, Carmichael's request to become an associate was discussed at a meeting of the attorneys in the Fall River office.[10] The hearing officer found that

[7]Wynn & Wynn is a law firm that employed, in October, 1994, more than forty attorneys in several offices in Massachusetts. At the time Wynn & Wynn had offices in Raynham (its main office), Boston, Hyannis, New Bedford, and Fall River.

[8]Carmichael testified that she discussed her plans to have additional children in the future as a "courtesy," because "children sometimes get sick and need their mother to stay home and take care of them." Carmichael felt that her employer "should be aware that [she] had a small child and planned on having more children."

[9]We note that her request was not unusual: law students are often hired for future employment as associates prior to their graduation from law school. There was testimony that Wynn & Wynn engaged in this typical practice.

[10]Carmichael testified that she spoke twice to Murray about becoming an

Murray expressed concern that (in his view) Carmichael had failed to inform him that she was pregnant when he hired her as a law clerk; he felt this indicated a lack of forthrightness on her part. Three other attorneys, Catherine Murphy, Laurie Mullen, and William Kenney each testified, however, that during the meeting Murray stated "flatly" that he would not have hired Carmichael as a law clerk had he known that she was pregnant, and that Carmichael's priorities were "elsewhere," presumably with raising a family instead of the practice of law. They said, and the hearing officer found, that Murray informed the group that he was going to tell Carmichael that there was no position available.[11] Murray denied making these statements, but the hearing officer did not credit his testimony. Three witnesses also testified that, after Murray made his comments, McKeon seemed shocked and stated, "I'm glad you said that and not me."[12]

The hearing officer found that, although Murray told Carmichael that there were no openings, another law clerk was under consideration as an associate attorney. Moreover, three months later Murray hired a new associate, Gary Vancini, a Rhode Island lawyer with less than one year of legal experience. Carmichael immediately confronted Murray, who insisted that Vancini was in a different category. In August, 1991, Carmichael met with Attorney Kevin O'Malley, who supervised the firm's law clerk program.[13] He informed her that her evaluations were excellent, that there was "not a black mark on them," but that, due to the hiring of Vancini, there was no position available in Fall River. Carmichael was again upset. Even then she sent a copy of her resume to the firm's named partner at its main office and asked to be considered for a position at any Wynn & Wynn office. When Carmichael left Wynn & Wynn in

associate. When no action followed their first conversation, Carmichael raised the subject a second time and Murray then told her that he would raise her request at the next attorneys' meeting. Attorneys Murray, McKeon, Richard Gallone, William Gately, William Kenney, Laurie Mullen, Catherine Murphy, and Leonard Schneider were present at the meeting when Carmichael's qualifications were discussed.

[11]There was no evidence that Murray had told Carmichael (or anyone else) before that meeting that there were no openings for associates.

[12]McKeon denied making this statement. The hearing officer did not credit his testimony, noting that he was generally unconvincing as a witness, and his demeanor led her to conclude that he had been less than forthright in his testimony about this particular incident.

[13]O'Malley was not present at the April 4, 1991, meeting during which Carmichael's request to become an associate had been considered.

November, 1991, shortly before her graduation, she had heard nothing about her request.

The hearing officer found that until March, 1992, Carmichael had no reason to believe that her earlier pregnancy had anything to do with the decision not to hire her. A chance encounter with William Kenney, who by then had left the firm, led her to speak to Laurie Mullen and Catherine Murphy. They relayed to her the events of the April, 1991, meeting at which Carmichael's future at the firm had been discussed. Carmichael filed her discrimination charge shortly thereafter.

The hearing officer made detailed findings concerning Wynn & Wynn's explanation of its failure to hire Carmichael as an associate attorney. First, it said Carmichael's performance as a law clerk had been unacceptable. The hearing officer reviewed the testimony of various attorneys who had worked with Carmichael, credited some, and discredited others. She found that Carmichael had never received substantive negative feedback during her entire employment at the firm, and that Murray's evaluation of Carmichael was not credible and was tainted by sexism.

Wynn & Wynn also claimed that Carmichael had not been offered an associate's position because no *entry-level* position existed at the time. The hearing officer found otherwise: shortly after the adverse employment decision (April, 1991), Murray had in fact hired associate Gary Vancini. The hearing officer also found that when associates Mullen and Murphy left the firm in February, 1992, Carmichael was not offered either of their positions; she found those associates were "replaced by male attorneys."[14] Until the spring of 1992, Carmichael continued to believe that an attorney position would be offered to her if one became available.

The hearing officer concluded that Carmichael had demonstrated "by direct evidence" that discriminatory animus was a "factor" in the decision not to hire her. She pointed to the array of witnesses who had testified credibly that Murray, the managing partner "ultimately responsible" for Carmichael's hiring,[15] had said he would inform Carmichael that there were no available openings in the face of evidence to the contrary.

The hearing officer concluded that Wynn & Wynn's failure to

[14]See note 26, *infra.*
[15]See note 24, *infra.*

hire Carmichael as an attorney was the result of a determination "tainted by sex discrimination." The decision, she said, may have resulted "in part" from concerns about Carmichael's performance, but the unlawful considerations were the "real reason" Carmichael was not offered a position. Murray, she concluded, was responsible for the decision not to hire Carmichael, and his expressed opinions with respect to her pregnancy "reveal a bias that tainted his estimation of her potential as an attorney and that was the primary factor influencing his decision not to offer her a position." The hearing officer also concluded that the conduct of McKeon and Murray pointed to "a pervasive attitude of sexism" that existed in the Fall River office; see part 4, *infra*.

2. *Right to jury trial.* Wynn & Wynn seeks retroactive application of our decision in *Lavelle* v. *Massachusetts Comm'n Against Discrimination*, 426 Mass. 332 (1997). The judge in the Superior Court denied the firm's motion for a new trial, reasoning that retroactive application of *Lavelle* to this case was not appropriate under the standards of *McIntyre* v. *Associates Fin. Servs. Co. of Mass.*, 367 Mass. 708, 712 (1975). He further concluded that, even if a new trial was warranted, Wynn & Wynn had failed to preserve its right to a jury. We agree, but for somewhat different reasons.

Prior to our decision in *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 657 (1996), we applied the three-factor analysis described in *McIntyre* v. *Associates Fin. Servs. Co. of Mass.*, *supra*, to determine whether a rule should have retroactive application.[16] In *MacCormack*, we concluded that the "issue of retroactivity may be resolved more simply." *MacCormack* v. *Boston Edison Co.*, *supra* at 656. To eradicate "selective temporal barriers" to the application of claims under our State Constitution in civil cases, we determined that we would give retroactive effect to a new constitutional rule, such as *Lavelle*,[17] to all litigants with live claims, i.e., those litigants with cases

---

[16] The three factors are (1) whether a new principle has been established whose resolution was not clearly foreshadowed, (2) whether retroactive application will further the rule, and (3) whether inequitable results, injustice, or hardships will be avoided by a holding of nonretroactivity. *McIntyre* v. *Associates Fin. Servs. Co. of Mass.*, 367 Mass. 708, 712 (1975).

[17] Our holding as to retroactivity concerns only those cases in which the court applies the new rule to the parties before it. *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 657 (1996). See *Harper* v. *Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993).

still open on direct review.[18] *MacCormack* v. *Boston Edison Co., supra* at 656-658. In *Lavelle* we applied the rule recognizing the right of a respondent in a discrimination case to a jury trial to the parties before us. See *Lavelle* v. *Massachusetts Comm'n Against Discrimination, supra* at 339. Because this case was pending on direct review at the time *Lavelle* was decided, it is appropriate to give retroactive effect here to that holding.

But that is not the end of our inquiry because Carmichael and the commission insist that Wynn & Wynn did not, in any event, preserve its right to a jury trial. We have recognized that it would be manifestly unfair to conclude that a party waived a constitutional issue by failing to raise it before the theory on which its argument is premised "has been sufficiently developed to put him on notice that the issue is a live issue." *Commonwealth* v. *Bowler*, 407 Mass. 304, 307 (1990). See *Commonwealth* v. *Stokes*, 374 Mass. 583, 587-588 (1978). We, therefore, must determine whether a respondent's right to a jury trial was sufficiently developed when Wynn & Wynn could have, but did not, assert that right. We have little hesitancy in concluding that it was. The right to a trial by a jury is recognized in art. 15 of the Massachusetts Declaration of Rights.[19] See also Mass. R. Civ. P. 38 (a), 365 Mass. 800 (1974) (right of trial by jury "shall be preserved to the parties inviolate"). Presented with any claim to a trial by jury in a discrimination case under G. L. c. 151B, we consistently have recognized that right as sacred. See *MacCormack* v. *Boston Edison Co., supra* at 655 (extending the right to trial by jury to claims for unlawful retaliation); *Whalen* v. *NYNEX Info. Resources Co.*, 419 Mass. 792,

---

[18]"Different considerations are at work where the judicial process has run its course, a final judgment reached, and a [litigant] . . . seeks to obtain the benefit of a new rule thereafter on [collateral attack]." *MacCormack* v. *Boston Edison Co., supra* at 658.

[19]Article 15 of the Declaration of Rights of the Massachusetts Constitution states:

"In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury; and this method of procedure shall be held sacred, unless, in causes arising on the high seas, and such as relate to mariners' wages, the legislature shall hereafter find it necessary to alter it."

794-795 (1995) (plaintiff constitutionally entitled to trial by jury for claim of employment discrimination based on physical handicap); *Dalis* v. *Buyer Advertising, Inc.*, 418 Mass. 220, 226 (1994) ("plaintiff is constitutionally entitled to a trial by jury for her claim of employment discrimination based on sex"). Our decision in *Lavelle* was the inevitable jurisprudential step that followed *Dalis* and *MacCormack*; we had not intimated in any respect that a respondent in a discrimination case had no such right.

Wynn & Wynn argues that it could not have asserted a jury claim before *Lavelle* because its right had not been recognized. But that is exactly what was done in every other case in which the right to a jury trial in a discrimination case was at issue: the party asserting the right properly preserved the issue. See *Lavelle* v. *Massachusetts Comm'n Against Discrimination, supra* at 334; *MacCormack* v. *Boston Edison Co., supra* at 654; *Dalis* v. *Buyer Advertising, Inc., supra* at 221. See also *Whalen* v. *NYNEX Info. Resources Co., supra* at 792-793; *Dean* v. *Springfield*, 38 Mass. App. Ct. 910, 911 (1995). It required no clairvoyance to anticipate the conclusion we reached in *Lavelle*. Indeed, Wynn & Wynn seems to have anticipated it; it acknowledges that it intended to seek a right to a jury trial from the appellate court on appeal. The Superior Court judge was correct to conclude that Wynn & Wynn waived its right to a jury trial.

3. *The discriminatory failure to hire.* Wynn & Wynn's challenge to the conclusion that it unlawfully failed to hire Carmichael may be succinctly summarized. Carmichael had the burden, it argues, to prove as part of her "prima facie" case that there was an opening for an *entry-level* associate attorney. Even if the hearing officer correctly concluded that Wynn & Wynn's reasons were a pretext, it continues, Carmichael faced a further "insurmountable hurdle": to prove as part of her prima facie case that a male entry-level associate was actually hired in her place. Wynn & Wynn misapprehends our law.

In cases involving discrimination on a forbidden ground (here sex), the initial burden is on the complainant to produce evidence of unlawful discrimination. She may meet that burden in one of two ways: by direct evidence[20] or indirectly, by circumstantial evidence. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 137-138

---

[20]We recognize the shortcomings of using the term "direct evidence." See *Johansen* v. *NCR Comten, Inc.*, 30 Mass. App. Ct. 294, 299-300 & n.6 (1991).

(1976). The hearing officer concluded, and the commission agreed, that Carmichael had produced direct evidence sufficient to meet her burden. For reasons we shall explain, that conclusion is supported by substantial evidence and is not based on any error of law. G. L. c. 30A, § 14 (7).

Many of our cases examining the Massachusetts discrimination statute have discussed the shifting allocations of evidentiary burdens, adhering to the three-stage framework explicated in the two leading Federal discrimination cases, *Texas Dep't of Community Affairs* v. *Burdine*, 450 U.S. 248, 252-253 (1981), and *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-805 (1973). See, e.g., *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 444-445 (1995); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, *supra* at 134-136. In *McDonnell Douglas* and *Burdine*, the United States Supreme Court recognized that there is often no direct evidence of discrimination; it adopted a three-stage approach to proof that would enable a plaintiff to prevail in the absence of direct evidence if other evidence is sufficient to demonstrate, by a preponderance of the evidence, that the defendant has discriminated.[21] In other words, the *McDonnell-Burdine* allocation of evidentiary burdens "presupposed that the evidence of unlawful discrimination would be circumstantial." *Johansen* v. *NCR Comten, Inc.*, 30 Mass. App. Ct. 294, 298 (1991), citing *Trans World Airlines, Inc.* v. *Thurston*, 469 U.S. 111, 121 (1985) (*"McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination"").

Under that now familiar approach, a plaintiff has the initial burden to establish a prima facie case. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, *supra* at 441.[22] Once she succeeds in doing so, the burden of production shifts to the employer

---

[21]As Justice O'Connor noted some years later, the "entire purpose of the . . . prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 271 (1989) (plurality opinion) (O'Connor, J., concurring).

[22]In a failure to hire case, a plaintiff may carry the burden of establishing a prima facie case with evidence that (1) she is a member of a class protected by the State discrimination statute, (2) she applied for an open position, (3) she was not selected, and (4) her employer sought to fill the position by hiring another individual with qualifications similar to hers. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 135 n.5 (1976). Contrary to Wynn & Wynn's argument, a plaintiff is not required to establish as part of her circumstantial prima facie case that an employer filled

to "articulat[e] a legitimate, nondiscriminatory reason" for the adverse employment action. *Id.*, citing *Wheelock College* v. *Massachusetts Comm'n Against Discrimination, supra* at 136. Once the employer meets its burden, it falls to the plaintiff in the final stage to prove that the employer's reason proffered in stage two is just a "pretext." *Blare* v. *Husky Injection Molding Sys. Boston, Inc., supra* at 442. This three-stage process is premised on the idea "that *either* a legitimate *or* an illegitimate set of considerations led to the challenged decision" (emphasis in original). *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 247 (1989) (plurality opinion).

There exists, however, a rare class of cases, referred to as "mixed-motive" cases, in which the plaintiff, armed with some strong (direct) evidence of discriminatory bias, demonstrates that at least one factor motivating the employer's decision is illegitimate. This is such a case. The inquiry in these cases is not whether a legitimate reason for the employment is a "pretext." Rather, the appropriate question is whether the employer's proffered legitimate reason *also* motivated the employment decision and, if so, to what extent: "[I]f a plaintiff in an unlawful discrimination case shows that an impermissible motive played a part in an employment decision, an employer may not prevail by showing, as in *McDonnell-Burdine,* a legitimate reason for its decision; the employer 'instead must show that its legitimate reason, standing alone, would have induced it to make the same decision.' " *Johansen* v. *NCR Comten, Inc., supra* at 301, quoting *Price Waterhouse* v. *Hopkins, supra* at 252.

The mixed-motive analysis is limited "to those infrequent cases in which a plaintiff can demonstrate with a high degree of assurance that the employment decision of which [she] complains 'was the product of a mixture of legitimate and illegitimate motives.' " *Fernandes* v. *Costa Bros. Masonry*, 199 F.3d 572, 580 (1st Cir. 1999), quoting *Price Waterhouse* v. *Hopkins, supra* at 247. A plaintiff proceeding down the mixed-

---

a position with a nonprotected class member (here, a man). See *Beal* v. *Selectmen of Hingham*, 419 Mass. 535, 541 (1995) (in discriminatory termination case, plaintiff must show as part of prima facie case that "the position remained open and the employer continued to seek applicants"). See also *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 3 (1998) (same); *Whalen* v. *NYNEX Info. Resources Co.*, 419 Mass. 792, 796 (1995) (same).

motive path[23] can meet her initial burden only by direct or strong evidence that proscribed criteria played a motivating part in an employment decision. See *Price Waterhouse* v. *Hopkins, supra* at 244. Direct evidence in this context is evidence that, "if believed, results in an inescapable, or at least highly probable, inference that a forbidden bias was present in the workplace." *Johansen* v. *NCR Comten, Inc., supra* at 300. Stray remarks in the workplace, statements by people without the power to make employment decisions, and statements made by decision makers unrelated to the decisional process itself do not suffice to satisfy the plaintiff's threshold burden in these cases. See *Price Waterhouse* v. *Hopkins, supra* at 277 (O'Connor, J., concurring); *Johansen* v. *NCR Comten, Inc., supra* at 302 ("[s]tray remarks suggestive of impermissible bias do not constitute the sort of evidence that places a case in the mixed motive category").

In this case the hearing officer correctly concluded that Carmichael had met her initial burden by demonstrating with direct evidence that discriminatory animus was a factor in the decision not to hire her. The statements by Murray at the April, 1991, meeting were not stray remarks. They were made by a person with the power to make employment decisions.[24] Finally, his statements related to the decisional process itself. Faced with direct evidence of gender discrimination, the hearing officer correctly did not require Carmichael to meet her threshold burden by proving in addition a "pretext" case using the classic four-part test for the first stage described in *Wheelock* and *Blare*. Rather, the hearing officer correctly evaluated Wynn & Wynn's proffered reasons for informing Carmichael that no position was

---

[23]A plaintiff is not required to choose between a mixed-motive approach and a pretext approach; she may proceed on either basis, or both, depending on the nature of the evidence. See note 32, *infra*.

[24]Wynn & Wynn argues that there was insufficient evidence to support the hearing officer's conclusion that Murray was "ultimately responsible" for hiring in the Fall River office. We do not agree. Murray was the managing partner in the Fall River office. He was a member of the firm's management committee, and he testified that the management committee generally supported any hiring decision of his. Murray was the initial, and determinative, arbiter of Carmichael's application. There was substantial evidence to support the conclusion that "but for" Murray's gender bias, Carmichael would have been hired.

available,[25] concluded that the decision not to offer Carmichael a position may have resulted "in part" from concerns about her performance, rejected Wynn & Wynn's claim that no position was available,[26] and concluded that Wynn & Wynn's actions were motivated primarily by unlawful discriminatory animus. There was no error.

We have concluded that, using the mixed-motive framework, the hearing officer's findings were fully supported and there was no error of law. Wynn & Wynn confined its challenge to her rulings concerning Carmichael's threshold burden of proof. In the interest of clarity, we now articulate the analysis that should be applied beyond the threshold stage when a mixed-motive framework is invoked in a discrimination case.[27]

---

[25]Contrary to Wynn & Wynn's argument, there was substantial evidence that Carmichael applied for an available position. Murray agreed to have her considered as an associate, and initiated a discussion to that end at the April, 1991, meeting. Had no position been available, that exercise would have been pointless; several attorneys present at the meeting testified that the question to be considered was whether the firm would offer Carmichael a permanent position. Moreover, an associate with less than one year's experience was hired shortly thereafter (July, 1991) and there was evidence that Wynn & Wynn viewed associates with zero to two years' experience as interchangeable.

[26]Wynn & Wynn challenges the hearing officer's finding that associates Laurie Mullen and Catherine Murphy "were replaced by male attorneys." It argues that three departing attorneys (Kenney, Mullen, and Murphy) were replaced by two attorneys, James O'Rourke and Clement Brown, both experienced attorneys (sixteen years and five years, respectively) with "transportable business." Because we conclude, as a matter of law, that Carmichael was not required to prove that she was rejected in favor of a male, entry-level associate attorney, whether Mullen and Murphy were "replaced" by "male attorneys" is irrelevant. We note, however, that there was uncontested evidence that three associates (Kenney, Muller, and Murphy) left the Fall River office in early 1992. It is a reasonable inference that at least one associate was needed to replace them. Wynn & Wynn in fact advertised on two occasions that spring for an associate with zero to two years of experience, and the hearing officer was not required to credit Wynn & Wynn's explanation that the advertisements were to address some internal reallocation of attorneys.

[27]We find it necessary to clarify the respective burdens in order to resolve a conflict in some cases. Compare *Brownlie* v. *Kanzaki Specialty Papers, Inc.*, 44 Mass. App. Ct. 408, 416-417 (1998) (burden of persuasion in mixed-motive case remains with employee throughout), with *Johansen* v. *NCR Comten, Inc., supra* at 296-297 (burden of persuasion in mixed-motive case shifts to employer once initial burden is met by employee). Massachusetts trial judges have applied the burdens of proof in mixed-motive cases in conflicting, or at least equivocal, ways. See, e.g., Nicosia *vs.* Moynihan-N.

This case presents our first opportunity since *Price Water-house* v. *Hopkins, supra,* was decided by the United States Supreme Court in 1989 to explicate the respective burdens of proof in a discrimination action under G. L. c. 151B where it has been shown that an employment decision resulted from a mixture of legitimate and illegitimate motives. *Wheelock College* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 130 (1976), was a pretext case decided long before *Price Waterhouse* v. *Hopkins, supra.* While *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437 (1995), was decided after *Price Waterhouse, Blare* is also a classic pretext case, and made no mention of *Price Waterhouse.*[28] Later cases also did not give occasion to discuss *Price-Waterhouse.* See, e.g., *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.),* 427 Mass. 1 (1998); *Matthews* v. *Ocean Spray Cranberries, Inc.,* 426 Mass. 122 (1997). Prior to *Price Waterhouse,* we held that in a mixed-motive case arising under our Labor Relations Act, G. L. c. 150A, the burden of persuasion remained with the plaintiff at every stage. See *Trustees of Forbes Library* v. *Labor Relations Comm'n,* 384 Mass. 559, 565-566 (1981). Following *Price Waterhouse,* however, the Appeals Court, in *Johansen* v. *NCR Comten, Inc., supra* at 302, understandably followed the change in Federal law implicitly recognizing that many of the Federal cases we relied on in *Trustees of Forbes Library* v. *Labor Relations Comm'n, supra,* were, in effect, overruled by *Price Waterhouse.* We now remove any doubt that the analysis contained in *Johansen* was correct; we follow the guidance of the United States Supreme Court with respect to the allocation of burdens of proof in mixed-motive cases.[29]

Under the mixed-motive framework, the plaintiff must first

---

Reading Lumber, Inc., Middlesex Superior Court, No. 94-4971 (Aug. 8, 1995) (following *Johansen*); Fajkowski *vs.* Mitre Corp., Middlesex Superior Court, No. 91-5842D (Aug. 24, 1993), aff'd, 38 Mass. App. Ct. 1109 (1995) (same); Pub Ventures, Ltd. *vs.* Massachusetts Comm'n Against Discrimination, No. 94-0678 (Nov. 17, 1994), citing *Trustees of Forbes Library* v. *Labor Relations Comm'n,* 384 Mass. 559 (1981).

[28]*Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437 (1995), concerned a challenge to the entry of summary judgment for the employer. The recitation of facts in *Blare* includes one stray remark suggestive of impermissible age bias, but that does not constitute "the sort of evidence that places a case in the mixed motive category." *Johansen* v. *NCR Comten, Inc., supra* at 302.

[29]The issue presented in this case is interpretation of a Massachusetts statute. G. L. c. 151B. Though we are not bound by Federal courts' interpreta-

prove by a preponderance of the evidence that a proscribed factor played a motivating part in the challenged employment decision. Once the plaintiff carries her initial burden, the burden of persuasion[30] shifts to the defendant who "may avoid a finding of liability only by proving that it would have made the same decision" even without the illegitimate motive.[31] *Price Waterhouse* v. *Hopkins, supra* at 244-245. See *Northeast Metro. Regional Vocational Sch. Dist. Sch. Comm.* v. *Massachusetts Comm'n Against Discrimination,* 31 Mass. App. Ct. 84, 89 n.1 (1991); *Johansen* v. *NCR Comten, Inc., supra* at 299 (when evidence of "declared animus or discrimination against the protected group . . . in the employment setting the employer was required not only to prove that there was a lawful reason for the employment decision but also to prove by a preponderance of the evidence that it would have made the same employment decision even though it may have taken . . . gender . . . or other improper characterization into account"). Cf. *Pryor* v. *Holidày Inns, Inc.,* 401 Mass. 506, 509 (1988), quoting *Trustees of Forbes Library* v. *Labor Relations Comm'n, supra* at 566. Of course, once the plaintiff has met her initial burden of persuasion on the presence of an illegitimate motive, the decision whether the employer has met its burden of proving that another legitimate, nondiscriminatory reason actually led it to make the decision is normally for the jury or other finder of fact to decide. Cf. *Matthews* v. *Ocean Spray Cranberries, Inc., supra* at 127 ("Summary judgment is admittedly a disfavored remedy in discrimination cases based on disparate treatment").[32]

    The rulings of the commission were consistent with this

tions of the similar Federal law, we may look to Federal interpretation for guidance. See *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination,* 375 Mass. 160, 167 (1978).

    [30]"[T]he employer's burden is most appropriately deemed an affirmative defense: the plaintiff must persuade the factfinder on one point, and then the employer, if it wishes to prevail, must persuade it on another." *Price Waterhouse* v. *Hopkins,* 490 U.S. 228, 246 (1989), citing *NLRB* v. *Transportation Mgt. Corp.,* 462 U.S. 393, 400 (1983).

    [31]In contrast, the burden of persuasion remains with the plaintiff throughout each stage of the "pretext" framework. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc., supra* at 443.

    [32]A plaintiff in a discrimination case, pursuant to G. L. c. 151B, § 4, may proceed on one or both of the available analytic frameworks, namely the mixed-motive and or pretext frameworks, to establish her case against an employer, depending on the nature of the evidence. In most cases the plaintiff will proceed on both theories simply because the structure of presentation of

formulation, even though it did not recognize explicitly that Wynn & Wynn had the burden to proffer an affirmative defense against Carmichael's proof of direct evidence of discrimination. See note 30, *supra*. The commission's ruling and the trial judge's affirmation of its ruling were correct.

4. *The dismissal of Carmichael's other claims.* The hearing officer made findings concerning Carmichael's claims of sexual harassment.[33] She credited Carmichael's testimony that, throughout her employment at Wynn & Wynn, McKeon subjected Carmichael to harassing behavior. He told sexual jokes daily, referring to himself as her "master" and her as his "servant." He commented on her clothing and the outline of her undergarments, and admonished her for not wearing nylons when she was pregnant because she did not have "tan, shapely legs." The hearing officer also credited Carmichael's testimony that McKeon made demeaning remarks about female attorneys,

---

evidence does not differ. The plaintiff should present evidence to establish a prima facie case under *Blare*. At the same time, the plaintiff should also present any direct evidence of discriminatory animus in the decisional process. The defendant should then present its case, including any legitimate, nondiscriminatory reasons for the employment decision. Once all the evidence is received, the judge should decide whether the mixed-motive or pretext framework properly applies to the evidence. If the plaintiff succeeded in satisfying the mixed-motive threshold, the case should be decided based on whether the defendant "can prove that, even if it had not taken [the proscribed factor] into account, it would have come to the same decision regarding [the plaintiff]." *Price Waterhouse* v. *Hopkins, supra* at 242. See *Johansen* v. *NCR Comten, Inc., supra* at 299 ("the employer carries the burden of persuading the finder that lawful considerations dictated the employer's action, notwithstanding the presence of animus based on age, race, etc."). If the plaintiff fails to satisfy the mixed-motive threshold, and a prima facie case is established, the case should be decided under the "pretext" case principles described in *Blare* v. *Husky Injection Molding Sys. Boston, Inc., supra*, and *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130 (1976).

[33]Wynn & Wynn claims that Carmichael presented no evidence on her claim of disparate treatment of employment and "conceded" at the hearing she was not pressing that claim. Carmichael's counsel did not entirely concede the claim: she stated that she was raising the disparate treatment issue "with respect to demeaning remarks made to [Carmichael] and made to other women which were not made to men. And to the extent the pregnancy claim can be seen as a disparate treatment claim, pregnant women are treated different or mothers, that also can be seen as a disparate treatment claim." Because we determine that this claim was untimely, we need not resolve whether Carmichael abandoned it.

and commented on several occasions that a particularly asser-
tive opposing female attorney must be a lesbian.[34]

Carmichael filed her sexual harassment and disparate treat-
ment claims in August, 1992. The hearing officer concluded that
Carmichael did not meet the six-month statutory deadline, G. L.
c. 151B, § 5, because she raised these claims for the first time
eight months after she left Wynn & Wynn and three months
after she filed her original complaint. She further concluded that
the claims did not relate back to the initial filing, 804 Code
Mass. Regs. § 1.10(6)(a) (1999),[35] because the allegations were
known to Carmichael at the time of and prior to the filing of her
initial complaint. There was no error.

As to her claim of "relating back," Carmichael relies on
several Federal cases holding that a discrimination claim
encompasses the allegations of the initial complaint and any
resulting investigation that reasonably would be expected to
grow out of those charges. See, e.g., *Yarber* v. *Indiana State
Prison*, 713 F. Supp. 271, 275 (N.D. Ind. 1988), quoting *Jen-
kins* v. *Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th
Cir.), cert. denied, 429 U.S. 986 (1976) (scope of complaint
includes investigation that would "reasonably be expected to
grow out of the charge"). See also *Adames* v. *Mitsubishi Bank
Ltd.*, 751 F. Supp. 1565, 1572 (E.D.N.Y. 1990) (same); *Ava-
gliano* v. *Sumitomo Shoji Am., Inc.*, 614 F. Supp. 1397, 1403
(S.D.N.Y. 1985) (same). But Carmichael's additional claims of

---

[34]The hearing officer also found that while Carmichael was breast feeding
her infant, she made arrangements to express breast milk at the office. On
those occasions, Carmichael secluded herself in her office with a "do not
disturb" sign on her door. On one occasion McKeon "barged into her office"
while her breasts were exposed, ignoring her request for privacy. On other oc-
casions he banged on her office door repeatedly while she was expressing
milk.

[35]The hearing officer cites to 804 Code Mass. Regs. § 1.03(5)(a) (1986),
which is now codified at 804 Code Mass. Regs. § 1.10(6)(a) (1999), and
states:

> "A complaint or any part thereof may be amended to cure technical
> defects or omissions, including failure to swear to the complaint, or to
> clarify and amplify allegations made therein. An amendment alleging
> additional acts constituting unlawful discriminatory practices related to
> or arising out of the subject matter of the original complaint may be
> made by Order of the Commissioner. Amendments shall relate back to
> the original filing date."

sexual harassment did not "grow out of" her claim of failure to hire, nor did Carmichael (or the investigating officer) discover the facts supporting her sexual harassment claim in the course of investigating her failure to hire claim. While the rules of "relation back" are liberal, cf. Reporters' Notes to Mass. R. Civ. P. 15 (c), Mass. Ann. Laws, Rules of Civil Procedure, at 426 (Lexis 1999), they are not so broad as to encompass any claim that was known to the complainant that could have been brought in a timely fashion.

Carmichael next contends that the statute of limitations should be equitably tolled because she was unaware of her statutory rights: there was no notice, she claims, displayed at the Wynn & Wynn offices as required by G. L. c. 151B, § 7.[36] The six-month statutory deadline mandated by G. L. c. 151B, § 5, is "in effect a statute of limitations subject to equitable tolling." *Christo* v. *Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 817 (1988). See *Agin* v. *Federal White Cement, Inc.*, 417 Mass. 669, 672 n.8 (1994). But the doctrine of equitable tolling "is applicable only where the prospective plaintiff did not have, and could not have had with due diligence, the information essential to bringing suit." *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 631 (1997). Carmichael was aware from the outset of the facts that would point to her sexual harassment and disparate treatment claims. See *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 398 (1994). Reasonable diligence would surely have revealed to Carmichael that the Commonwealth for decades has provided both administrative and judicial relief for the victims of sex discrimination, and that sexual harassment of the kind described by Carmichael and found to be credible is not condoned. There was no error.[37]

5. *Damages award.* We turn now to address the challenges of

---

[36]General Laws c. 151B, § 7, provides that "[e]very employer . . . subject to this chapter, shall post in a conspicuous place or places on his premises a notice to be prepared or approved by the commission, which shall set forth excerpts of this chapter and such other relevant information which the commission deems necessary to explain the chapter." The hearing officer did not find that Wynn & Wynn failed to post the required notice, and our review of the record suggests that the evidence on this point was equivocal, with some witnesses testifying that a sign was posted, and others recollecting to the contrary.

[37]Because we determine that Carmichael's amended complaint does not relate back to her original complaint, we need not address her assertion that the "continuing violation" doctrine applies to her case, see *Carter* v. *Commissioner of Correction*, 43 Mass. App. Ct. 212, 222-223 (1997), or the MCAD's

both Wynn & Wynn and Carmichael to the damages awarded by the commission. Wynn & Wynn disputes the damages awarded for back pay and emotional distress, as well as the commission's award to Carmichael of attorney's fees and costs. Carmichael challenges the failure to award her damages for lost front pay.

On a finding of discrimination, the commission has the authority to grant such relief as is appropriate, including lost wages and benefits, damages for emotional distress, and, in appropriate circumstances, compensatory damages for loss of future earning capacity. G. L. c. 151B, § 5. See *Lavelle* v. *Massachusetts Comm'n Against Discrimination*, 426 Mass. 332, 337 (1997). The formulation of the type of relief appropriate in a particular case is within the commission's discretion, see *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 303, 315-317 (1976), provided any damages awarded are supported by substantial evidence. See *Buckley Nursing Home, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 20 Mass. App. Ct. 172, 182 (1985) (emotional distress). See also *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 390 (1988) (G. L. c. 151B, § 9, authorizes an award of damages for loss of future earnings and benefits that have been proved with reasonable certainty as attributable to employer's misconduct subject to employee's duty to mitigate); *St. Elizabeth's Hosp.* v. *Labor Relations Comm'n*, 2 Mass. App. Ct. 782, 782-783 (1975) (back pay).

(a) *Back pay.* Wynn & Wynn challenges the award of back pay, an issue it did not raise either before the commission or in the Superior Court. The judge did not reach the question, presumably for that reason. Objections, issues, or claims — however meritorious — that have not been raised in the trial court are deemed to have been waived on appeal. See *Mc-*

claim that Carmichael failed to meet the legal standard for a claim of sexual harassment.

Wynn & Wynn argues that the Superior Court was without jurisdiction to hear Carmichael's challenge to the commission's dismissal of her sexual harassment and disparate treatment claim because she failed to seek judicial review within thirty days of receipt of the decision, as required by G. L. c. 151B, § 6. See G. L. c. 30A, § 14. Rather, it points out, Carmichael relied on a late-filed counterclaim. The commission made a similar argument in the Superior Court in support of its motion to dismiss Carmichael's counterclaim. It does not press that point on appeal. We are not required to reach this question because we have concluded that Carmichael's claims are without merit.

*Namara* v. *Honeyman*, 406 Mass. 43, 53 (1989); *Palmer* v. *Murphy*, 42 Mass. App. Ct. 334, 338 (1997). Accordingly, we do not address any of Wynn & Wynn's challenges to this aspect of the damage award.[38]

(b) *Emotional distress.* The hearing officer also found that Carmichael suffered emotional distress as a direct result of Wynn & Wynn's unlawful actions and made detailed findings to that effect. "[T]he finding of [discrimination] alone permit[s] the inference of emotional distress as a normal adjunct of the [employer's] actions." *Buckley Nursing Home, Inc.* v. *Massachusetts Comm'n Against Discrimination, supra* at 182, quoting *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination, supra* at 317. In any event, the hearing officer's conclusion that Carmichael's emotional trauma resulted from Wynn & Wynn's own discriminatory conduct was fully supported by substantial evidence in the form of compelling testimony by Carmichael. See, e.g., *Franklin Publ. Co.* v. *Massachusetts Comm'n Against Discrimination*, 25 Mass. App. Ct. 974, 975 (1988). We reject Wynn & Wynn's argument that any emotional distress Carmichael did suffer was caused by various personal problems Carmichael faced at the time, the stress of the litigation, or from McKeon's sexually harassing conduct, rather than from Wynn & Wynn's discriminatory conduct. While there may have been evidence to that effect, the hearing officer plainly weighed all of the testimony, and reached her own conclusion as to credibility and the weight of the evidence.[39] The damages were neither greatly disproportionate to the injury proved, nor did they represent a miscarriage of justice. *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 824 (1997).

(c) *Attorney's fees.* Wynn & Wynn claims that the commission erred in awarding Carmichael her attorney's fees and costs

---

[38]We do note that Wynn & Wynn argues that back pay may be calculated only from the date the position for which Carmichael applied was actually filled until the date on which she obtained comparable employment, or would have had she diligently sought work. Because we already concluded that Carmichael was not required to prove, nor the hearing officer find, that an entry-level position was filled at any particular time, only that a position was available to Carmichael, there is no merit to that claim. See note 22, *supra.*

[39]Wynn & Wynn argues that the emotional distress award was influenced by evidence of McKeon's harassing conduct. But the evidence of the failure to hire and resulting emotional distress fully supports the hearing officer's award of emotional distress damages, independent of any of McKeon's harassing conduct.

because she did not prevail on "two of her three claims," nor was she entitled to fees to litigate the "distinctly different" claims on which she did not prevail. The commission determined that the interrelationship of the successful failure to hire claim and the unsuccessful sexual harassment claim was substantial, but reduced the award by ten per cent to reflect that Carmichael did not prevail on the latter.[40] The commission's conclusions are well within the permissible bounds of its discretion. See *Baker* v. *Winchester School Comm.*, 14 M.D.L.R. 1079 (1992). Cf. *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 324 (1993) ("The amount of a reasonable attorney's fee, awarded on the basis of statutory authority, in this case G. L. c. 151B, § 9, is largely discretionary with the judge . . .").

Wynn & Wynn further complains that Carmichael's attorneys billed in quarter-hour increments, and should have billed in one-tenth of an hour increments. The commission may, and did, consider the time increments used to account for time spent on this matter. As a general matter, billing in one-tenth of an hour increments is preferable, and there may be circumstances in which billing in quarter-hour increments results in an inflation of hours for certain tasks. But it falls within the discretion of the commission to determine whether there should be a reduction in a particular case; we see no reason to impose a per se rule that attorney's fees billed in quarter-hour increments must be reduced in every case.[41]

(d) *Front pay.* The hearing officer made no award of front pay to Carmichael finding that any such award would be "entirely speculative" in light of the existing economic conditions, because there was no reliable means of determining how long Carmichael would have remained with Wynn & Wynn had she been hired. The hearing officer is warranted in refusing to award front pay if the amount is not reasonably ascertainable.[42]

[40]The commission concluded that, after the reduction, the hours billed were reasonable in light of the facts, the legal issues, "and the extremely vigorous defense which was put on by counsel for the respondent."

[41]Wynn & Wynn challenges the award of fees paid to an economic expert because the expert gave testimony relating to front pay, a claim on which Carmichael did not prevail. The expert also testified about Carmichael's past lost earnings from which her back pay could be determined. It was proper to include the expert's cost in the award.

[42]There was evidence that tended to show that several associates left the firm voluntarily, or were laid off during the years preceding the hearing in this matter.

See *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 390 (1988). There was no error.

6. *Attorney's fees on appeal.* Carmichael has moved for an award of appellate attorney's fees and costs. She is entitled to such an award, which should be calculated in accordance with the principles expressed in *Yorke Mgt.* v. *Castro*, 406 Mass. 17, 20 (1989).

*Judgments affirmed.*