Gants, J.
The plaintiff, Walter Soriano (“Soriano”), a Hispanic police officer with the defendant Lawrence Police Department (“the Department”), has filed suit under G.L.c. 15IB, §4, alleging that the Department discriminated against him because of his race and national origin by denying him the opportunity in 1985 to take the Captain’s Examination. The Department now moves to dismiss, arguing that the complaint is barred by the statute of limitations. With the consent of all parties, the plaintiff filed affidavits in opposition, thereby transforming this motion into one for summary judgment. After hearing, the motion for summary judgment is DENIED.
BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently the facts stated below are presented in the light most favorable to *566 Soriano and should not be misunderstood as findings of the Court.
Soriano joined the Department in 1972. After a decade of exemplary service, he passed the civil service promotional examination for sergeant in 1984, and placed second on the promotion list. Alderman Raymond Johnson was empowered by the City of Lawrence to determine who was to be appointed to sergeant, and he passed over Soriano in favor of a white police officer who scored below Soriano on the civil service promotional examination. Soriano instead was appointed Acting Sergeant. Alderman Johnson promised Soriano the next available permanent sergeant vacancy. However, when the next permanent sergeant vacancy became available, Alderman Johnson again passed over Soriano in favor of another white police officer who scored below him on the civil service promotional examination. This time Soriano confronted Alderman Johnson about his failure to appoint him. The Alderman threw Soriano out of his office, yelling, “Do you think you should get the job just because you are Spanish?” Soriano responded that he should have gotten the job because he was qualified. The Alderman replied that he did not “give a sh — ” about Soriano’s record and threatened to “bury” Soriano if he gave the Alderman any trouble. Soriano then complained to the Massachusetts Commission Against Discrimination ("the MCAD”) and Lawrence’s Equal Employment Opportunity (“EEO”) Director. As a result of intervention by the EEO Director, Soriano was appointed permanent sergeant.
In May 1985, the Department sought a new captain. Since less than four lieutenants registered for the civil service captain’s examination, G.L.c. 231, §59 permitted sergeants with one “year in rank,” defined as 250 days, to sit for the captain’s examination. Time accumulated as acting sergeant counted toward the “year in rank” requirement so, in theory, both Sergeant Soriano and a non-Hispanic, white captain — Sergeant DeFusco — should have been eligible to take the captain’s examination in view of the amount of time they had served as acting sergeants. However, Aider-man Johnson had never submitted documentation acknowledging the acting sergeant appointments of either Soriano or DeFusco. The Civil Service Commission, therefore, declared that it would need Alderman Johnson to document their acting appointments in order for them to be eligible for the captain’s examination.
Soriano and DeFusco agreed that, since DeFusco was a political supporter of Alderman Johnson, DeFusco would approach the Alderman and ask him to report their time as acting sergeant to the Civil Service Commission so they would be eligible for the captain’s examination. DeFusco met with the Alderman and reported back to Soriano that the Alderman would not submit the paperwork for either sergeant and that neither would be eligible to sit for the captain’s examination. Soriano did not think the Alderman was discriminating against him since the Alderman was denying this opportunity for promotion to both a minority officer and a white officer.
On March 4, 1997, roughly twelve years later, DeFusco for the first time told Soriano what really happened in DeFusco’s meeting with Alderman Johnson. According to DeFusco, the Alderman acknowledged that both sergeants would be eligible to sit for the captain’s examination if he reported their acting sergeant’s time to the Civil Service Commission. The Alderman also said that Soriano would likely pass the examination and, if Soriano did pass, the Alderman would be required to appoint Soriano as captain. The Alderman said he did not want to appoint Soriano to the captain’s position and, therefore, would refuse to submit the necessary documentation to the Civil Service Commission. He apologized to DeFusco for not sending the documentation for him but explained, "if I do, I will have to do it for that Soriano, and I don’t want to do that. I don’t want a Spanish captain.”
On August 6, 1997 (within six months of learning this new information from DeFusco but twelve years after the Alderman refused to send the Civil Service Commission the needed documentation), Soriano filed a complaint with the MCAD.
DISCUSSION
There is no dispute that the alleged act of discrimination that Soriano complains of occurred in May 1985, when Alderman Johnson, in order to ensure that there was no “Spanish captain,” refused to send to the Civil Service Commission the documentation needed to allow Soriano to sit for the captain’s examination. There is also no dispute that Soriano did not file his complaint with the MCAD until August 6, 1997, within six months of learning this new information from DeFusco but twelve years after the Alderman allegedly committed the act of discrimination. Nor can there be any dispute that a complaint of discrimination under G.L.c. 15 IB must be filed with the MCAD “within six months after the alleged act of discrimination.” G.L.c. 15IB, §5. The issue, then, is whether the statute of limitations clock began to run in May 1985, when the alleged act of discrimination occurred, or on March 4, 1997, when DeFusco told Soriano the full story of what Alderman Johnson had said.
Surprisingly, there is little case law on this issue in the context of discrimination cases. The Supreme Judicial Court has held that the statute of limitations for complaining of a discriminatory act “does not begin to run until the employee has sufficient notice of that specific act.” Wheatley v. American Telephone & Telegraph Co., 418 Mass. 394, 398 (1994), quoting McConnell v. General Tel. Co. of Cal, 814 F.2d 1311, 1317 (9th Cir. 1987), cert. denied, 484 U.S. 1059 (1988). What is less clear is whether the clock begins to run from the date of notice of the specific, adverse act or the date of notice that the specific, adverse act was *567 motivated by discrimination. This Court believes that the clock begins to run from the date of notice that the specific, adverse act was motivated by discrimination.
In a discrimination case, where there is no direct evidence of discrimination, a prima Jade case of discrimination is established when the employee meets his initial burden of showing that “(1) he is a member of a class protected by G.L.c. 15 IB; (2) he performed his job at an acceptable level; (3) he was terminated; and (4) his employer sought to fill the plaintiffs position by hiring another individual with qualifications similar to the plaintiffs . . . [T]he elements . . . may vary depending on the specific facts of a case.” Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 441 (1995). Once the plaintiff meets his burden of proving the prima Jade case, the burden of production shifts to the employer to “articulate a legitimate, nondiscriminatory reason for the adverse employment action.” Wynn & Wynn, P.C. v. Massachusetts Commission Against Discrimination, 431 Mass. 655, 665-66 (2000), quoting Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. at 441. If the defendant employer fails to meet that burden of production, the plaintiff employee prevails. Wynn & Wynn, P.C. v. Massachusetts Commission Against Discrimination, 431 Mass. at 666. In Wheatley, where age discrimination was alleged, the Supreme Judicial Court held that “the limitations period does not start to run until the employee knows or should know that he or she has been or will be replaced by a person outside the protected age group.” Wheatley v. American Telephone & Telegraph Co., 418 Mass. at 398.[1] For all practical purposes, this means that the limitations period does not begin to run until the employee knows or should know information sufficient to make out a prima facie case of discrimination. In other words, the Supreme Judicial Court in Wheatley decided to start the limitations clock running, not when the adverse employment action took place, but when the plaintiff knew or should have known facts sufficient to permit an inference that the adverse employment action was motivated by discrimination.
This conclusion — that the limitations clock begins to run when the plaintiff knew or should have known facts sufficient to permit an inference that the adverse employment action was motivated by discrimination— is consistent with the Supreme Judicial Court’s more complete discussion of when the limitations clock commences in a medical malpractice case. In a medical malpractice case, the limitations clock does not begin when the plaintiff has notice that he was harmed; it begins only when the plaintiff possessed sufficient information or was aware of such suspicious circumstances that he recognized (or a reasonably prudent person in the plaintiffs position should have recognized) that the medical treatment he received from the defendant may have caused him harm. See McGuinness v. Cotter, 412 Mass. 617, 627-28 (1992) (cause of action accrues when plaintiff had “knowledge or sufficient notice that the obstetrical care she received from the defendants may have caused [plaintiffs] disabilities’’); Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990) (must be “significant notice of causation” such that “a reasonable person in the position of the plaintiff would have been on notice that her mother’s ingestion of DES may have caused the plaintiffs cancer”); Fidler v. Eastman Kodak Co., 714 F.2d 192, 199 (1st Cir. 1983) (“notice of likely cause is ordinarily enough to start the statute running”); Malapanis v. Shirazi, 21 Mass.App.Ct. 378, 383 (1986) (“the three-year limitations period commences to run when a reasonably prudent person (in the tort claimant’s position), reacting to any suspicious circumstances of which he might have been aware (what the Court of Appeals in Fidler called ‘likely cause’), should have discovered that he had been harmed by his physician’s treatment”).
In each.of these cases articulating the “discovery rule,” the essential principle is that the limitations clock does not start to run until the plaintiff knows or should know facts that are sufficient to furnish notice that the plaintiff may have a cause of action. An adverse employment act, standing alone, is insufficient to give notice that the adverse act was motivated by discrimination. Something more is needed to provide that notice, such as facts sufficient to support a prima facie case of discrimination or direct evidence of discrimination.
In the instant case, there was no prima facie case of discrimination in May 1985, when the Alderman effectively denied both Soriano and DeFusco admission into the captain’s examination. Indeed, the prima facie case analysis does not even apply to this case because the only evidence of discrimination is the direct evidence of what the Alderman told DeFusco. See Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116 (2000) (prima facie case analysis does not apply when there is direct evidence of discrimination). This direct evidence of discrimination was not known or reasonably knowable to Soriano until DeFusco, on March 4, 1997, told him what really happened in May 1985. In short, there is at least a genuine issue of material fact as to whether Soriano in May 1985 knew or should have known of information suggesting that the Alderman’s conduct was motivated by discrimination. There is also a genuine issue of material fact as to whether Soriano was on notice in May 1985 of information that, with reasonable inquiry, would have disclosed the Alderman’s discriminatory motivation. In view of these genuine issues of material fact, the motion for summary judgment on statute of limitations grounds must be denied. See Riley v. Presnell, 409 Mass. 239, 240 (1991) (the question of when plaintiff knew or should have known of his cause of action is one of fact which must be decided by the trier of fact).
*568 There is another independent basis on which to deny summary judgment. Under G.L.c. 260, §12, “(i]f a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." There is evidence in the record that the Alderman decided to bar DeFusco from the captain’s examination solely to conceal his discriminatory intent to bar Soriano, and that this ruse succeeded for twelve years until DeFusco came clean. Consequently, there is a genuine issue of material fact as to whether the Department, through the Alderman, fraudulently concealed from Soriano his discrimination cause of action by blocking both DeFusco and Soriano from the captain’s examination.
ORDER
For the reasons stated above, the defendant Department’s motion for summary judgment is DENIED.

It should be noted that the Supreme Judicial Court has more recently declared that “a plaintiff is not required to establish as part of her circumstantial prima facie case that an employer filled a position with a nonprotected class member . . .” Wynn & Wynn, P.C. v. Massachusetts Commission Against Discrimination, 431 Mass. at 665 n. 22.