Curran, Dennis J., J.
The plaintiff Timothy H. Shea seeks judicial review under G.L.c. 30A, §14, of a Firearms Licensing Review Board decision which denied his petition to restore his right to possess firearms in Massachusetts. Mr. Shea has filed a motion for judgment on the pleadings, pursuant to Mass.R.Civ.P. 12(c) and Superior Court Standing Order 1-96(4).
For the following reasons, Mr. Shea’s motion is ALLOWED.
BACKGROUND
The following facts are taken from the administrative record. The court reserves further facts for legal analysis.
Some 27 years ago, Mr. Shea pleaded guilty to simple assault in the Lowell District Court. This charge stemmed from an incident that occurred in a large, 200-car capaciiy, parking lot of Chevy’s bar in Lowell. Mr. Shea and three friends agreed to help a group of young women find their car, which they believed was located somewhere in the parking lot. The group drove around the parking lot for a half hour in a Jeep searching for the car. Mr. Shea was a passenger in that Jeep. After their search proved fruitless, Shea and his friends dropped the women at the entrance to the bar and drove home. While driving home, one of Shea’s friends found a pocketbook that one of the women had left in the back seat, and threw it out. Shortly after, the Lowell police pulled the Jeep over and arrested the men for unarmed robbery and kidnapping. The statements from the young women sharply conflicted. It appears that the young women may have contrived the allegations to explain away their late return home to their parents. As a result, the *158 Commonwealth nolle prossed the unarmed robbery and kidnapping charges. Shea agreed to plead guilty to a single charge of simple assault and received a one-year sentence of probation. That term was completed without incident.
General Laws c. 140, §13l(d)(i)[b), disqualifies applicants who have previously been convicted of a misdemeanor punishable by an imprisonment term of two years or more from obtaining a firearms license.[1] Assault is a disqualifying offense because it carries a maximum imprisonment term of two and a half years. G.L.c. 265, §13A. Thus, because Mr. Shea was previously convicted of the misdemeanor assault, he is prohibited by statute from applying for a firearms license.[2]
However, statutorily disqualified applicants may still obtain a firearms license if they meet requirements as to suitability, decided by the Firearms Licensing Review Board. The Board may restore a petitioner’s rights if two-thirds of the sitting members determine that: 1) the petitioner’s disqualifying conviction meets the eligibility criteria under G.L.c. 140, §130B(b);[3] 2) the petitioner is not otherwise barred from obtaining a firearms license; and 3) the petitioner has proved by clear and convincing evidence that he is a suitable candidate to hold a firearms license. Once an applicant’s rights are restored, he may then apply to his local licensing authority for a firearms license.
On January 28, 2013, Mr. Shea, proceeding pro se, sent a petition to the Firearms Licensing Review Board seeking review of his eligibility and suitability for a firearms license. In his application, Mr. Shea was asked what the maximum term of incarceration was for the charge of assault; he answered incorrectly.
On March 5, 2013, Mr. Shea appeared before five members of the Board for a hearing on his petition. At the hearing, Mr. Shea testified on his own behalf and presented three live witnesses and twelve letters of recommendation in support of his petition. Each letter was written by an active or retired police officer or military veteran. Each person spoke highly of Shea’s character and his outstanding history of public service, honoring his service to veterans and particularly, his work for wounded veterans. Each concluded that they believed Mr. Shea was a fine candidate to possess a firearm. For example, one individual wrote that both he and Shea learned the importance of treating weapons with respect and practicing firearms safety from Shea’s grandfather. In another, a Methuen Police Lieutenant, the lead firearms instructor for that town’s police department for 25 years, wrote that he has been shooting with Shea many times and on each occasion, found him to be a “competent and safety conscious shooter.” Indeed, Stoneham Police Chief James T. McIntyre, who is Mr. Shea’s local licensing authority, indicated that if Mr. Shea were successful in his petition to the Board, he would issue Shea a license.
At the hearing, the Board members narrowly focused their questioning on the events about Mr. Shea’s assault conviction from 27 years ago.
On October 8,2013, the Board concluded that Shea had failed to adequately prove that he was suitable to possess a firearm. It found that his failure to correctly state the maximum incarceration term for assault demonstrated a lack of respect for the firearms laws and an unwillingness to take the firearms licensing process seriously; that he was withholding information about the assault; and that he had not accepted responsibility for his actions.
On November 6, 2014, Mr. Shea filed a complaint with this Court seeking judicial review of the Board’s decision, under G.L.c. 30A, §14.
DISCUSSION[4]
Under Chapter 30A, judicial review of a Board’s decision is confined to the administrative record. G.L.c. 30A, § 14(5). The court may overturn the Board’s decision only if it finds that the decision is based upon an error of law, unsupported by substantial evidence, oris arbitrary and capricious. G.L.c. 30A, §14(7); see Connolly v. Suffolk County Sheriff’s Dep’t., 62 Mass.App.Ct. 187, 192 (2004). Mr. Shea bears the burden of demonstrating the decision’s invalidity. See Faith Assembly of God v. State Bldg. Code Commission, 11 Mass.App.Ct. 333, 334 (1981).
A reviewing court must, of course, “give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992), quoting G.L.c. 30A, §14(7). The court may not substitute its judgment for that of the Board. S. Worcester County Reg’l Voc. Sch. Dist. v. Labor Relations Comm’n., 386 Mass. 414, 420-21 (1982). Thus, so long as the Board’s decision is supported by substantial evidence, “[a] court may not displace . . . [its] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.” Connolly, 62 Mass.App.Ct. at 192, quoting Embers of Salisbury, Inc. v. Alcoholic Beverages Control Comm’n., 401 Mass. 526, 529 (1988) (citation omitted) (italics supplied.)
An applicant before the Firearms Board must prove by clear and convincing evidence, to at least two-thirds of its sitting members that he is a suitable person to hold a firearms license. G.L.c. 140, §130B(d)(iii). While the Board is afforded wide discretion in making its determination as to the suitability of a firearms license applicant, its discretion is “not without its limits.” See Firearms Records Bureau v. Simkin, 466 Mass. 168, 181 (2013) (applying this principle to the Firearms Records Bureau). The Supreme Judicial Court has noted that in cases such as this one, where there are no established regulations to provide guidance, “individual suitability determinations become more sus *159 ceptible to attack on the ground that they are arbitrary and capricious.” Id. at 182.
Substantial Evidence
Mr. Shea argues that the Board’s decision to deny his petition was unsupported by substantial evidence. The Board states that there was ample evidence in the record to support its conclusion. It points to Mr. Shea’s failure to complete his application correctly, his failure to disclose all of the details concerning the incident that gave rise to his assault conviction, and his failure to accept responsibility for his actions.
Substantial evidence is defined as “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). Under this standard, the court must determine “whether the finding could have been made by reference to the logic of experience.” New Boston Garden Corp. v. Bd. of Assessors of Boston, 383 Mass. 456, 466 (1981) (emphasis in original and citation omitted). The court is not required to uphold a Board’s decision merely upon a finding that the record includes evidence upon which a rational mind may make the applicable inference. Cohen v. Bd. of Registration in Pharmacy, 350 Mass. 246, 253 (1966). Rather, the court is charged with examining the entire record and must take into account whatever evidence in the record fairly detracts from its weight. New Boston Garden Corp., 383 Mass. at 466.
The Board found in its decision that Mr. Shea’s incorrectly answered two questions on his application demonstrated a lack of respect for Massachusetts firearms laws and showed that he was unwilling to take the firearms licensing process seriously. It concluded that Mr. Shea failed to prove thereby that he was a suitable candidate. The evidence in the record, however, does not support the Board’s conclusion. The questions in the application at issue concerned whether the applicant had ever been convicted of a crime punishable by a particular maximum term of imprisonment.[5] Mr. Shea testified at the hearing that he did not know the maximum period of incarceration for assault. While he answered these questions incorrectly, he did disclose his assault conviction and, in fact, detailed the crime on a later part of the application. Thus, Shea forthrightly disclosed the information that questions 6 and 7 were designed to elicit, albeit on another part of the application. It cannot be rationally concluded that Shea was attempting to withhold information from the Board or intentionally filled out the application incorrectly. Instead, the evidence shows that he disclosed the relevant criminal offense on his application (albeit in the wrong bureaucratic box), and answered these questions incorrectly due to not being fully schooled on the details of Massachusetts’ sentencing laws.
The evidence in the record further shows that Mr. Shea has, indeed, taken the firearms licensing process very seriously and has fully complied with the firearms laws. Before his license was statutorily revoked,[6] Shea had held a resident Class A license to carry firearms in Massachusetts[7] since 1998. Before that, he held a firearms identification card. There were no reported incidents during this period involving improper use of his firearm or any sort of violence. In fact, Shea has not been involved in any reported criminal activity since the incident in 1987. To the contrary, Mr. Shea’s firearms license history shows that he properly applied for renewal of this license at the appropriate times before the applicable expiration date. Further, he completed the required firearms safely course that applicants must take before being issued a license to carry, and has completed the requisite hunter education class required for the issuance of a hunting license. Many police officers and former military officers, who have been shooting with him in the past, wrote in their recommendations that he is a competent and safeiy conscious shooter. Taking into account this evidence in the record, a rational mind could not conclude that because Shea answered two questions incorrectly on his application he does not respect the firearms laws or did not take the licensing process seriously. Instead, it merely suggests that he was unaware — as most people are — of the maximum term of imprisonment for assault.[8]
The Board also cited Shea’s failure to be forthcoming as to the details surrounding the assault. It found that Shea’s failure to disclose all of the details at his hearing suggested either that he was intentionally withholding information that the Board specifically asked him about or that he was not taking the hearing seriously. The evidence in the record hardly supports this conclusion.
The Board found that Shea’s version of events did not line up with the charge entered against him. At the hearing, it focused a great deal on the fact that, in their opinion, the facts as recited by Shea could not have supported any of the charged offenses, those being kidnapping, unarmed robbery, and assault. Thus, the Board concluded in its decision that Mr. Shea must have intentionally withheld information. What the Board failed to take into account, however, is that the Commonwealth nolle prossed the kidnapping and unarmed robbery charges. While the nolle prosequi of these charges does not preclude the Board from making a determination regarding Mr. Shea’s suitability, it was impermissible for the Board to draw negative inferences against Mr. Shea based upon these charges when rendering its decision. See Stavis v. Carney, 2000 WL 1170090 at *7 (Mass.Super. July 31, 2000). The fact that the Commonwealth nolle prossed these charges seems to suggest, at least in some sense, that factual support for the charges was lacking or non-existent.
The Board also questioned why Mr. Shea would plead guilty to a charge of assault when there were no underlying facts that he actually committed that of *160 fense. It is within the province of the Board to judge the credibility of Mr. Shea’s statement and the court, in undergoing its review, must adopt the Board’s credibility determination. See Greater Media, Inc. v. Dept. of Pub. Util., 415 Mass. 409, 417 (1993) (where the court noted that “(flactual disputes and matters of credibility are for the agency, not this court, to resolve”). Its conclusion, however, that Mr. Shea intentionally withheld information or failed to take the hearing seriously is tenuous at best and is indeed, undercut by other evidence in the record. See Pyfrom v. Comm’r of Pub. Welfare, 39 Mass.App.Ct. 621, 624-25 (1996) (noting that in determining whether the agency’s decision is supported by substantial evidence, court must examine entire administrative record and take into account whatever detracts from its weight).
In preparation for his hearing, Mr. Shea lined up three witnesses to speak on his behalf and furnished letters of recommendation from twelve other individuals. Each letter is impressive. He prepared his own written statement and testified on his own behalf. Mr. Shea also attempted to locate the police reports as well as his own personal records and his former attorney’s records to furnish them for the Board’s review at the hearing. However, as the incident occurred 27 years ago, his attorney has since died and his records have been destroyed. From this evidence, it cannot be rationally concluded that Mr. Shea was intentionally withholding information or not taking his hearing seriously.
Finally, the Board found that Mr. Shea failed to accept responsibility for his wrongdoing. At the hearing, Shea explained that he chose to plead guilty instead of going to trial to contest the charges against him on the advice of counsel and as a simple means of case resolution. The Board equated his reasons for pleading guiliy and his explanations as to why he believed the women made the original allegations against him as placing blame for what happened to him onto all of the other parties involved. It cited this as a further reason why Mr. Shea had not met his burden. Mr. Shea, however, took responsibility for his actions in 1987 when he entered his guiliy plea, and served his one-year probation sentence.
Further, the Board’s conclusion that Mr. Shea had not accepted responsibility for his actions is not a valid rationale for deeming him an irresponsible gun owner, especially considering the great weight of the evidence points otherwise. See id. at 625, quoting New Boston Garden Corp., 383 Mass. at 466 (A Board’s “determination may be set aside if the evidence . . . points to an overwhelming probability of the contrary” (alteration in original and internal quotations omitted)); compare Gemme v. Smith, 2012 WL 6616936, at *2-3 (Mass.Super. Nov. 13, 2012) (upheld police chiefs finding of unsuitability where petitioner was alleged to have physically abused his wife and was uncooperative with police who were dispatched to scene of incident); Catucci v. Benedetti, 2010 WL 4072790, at *1 (Mass.Super. Aug. 31,2010) (upholding Board’s denial of plaintiffs petition to restore firearms rights where plaintiff pleaded nolo contendere to assault and battery, lied on application about existence of disqualifying offense, pleaded guilty to disorderly conduct in 1979, and previously exhibited careless behavior regarding his firearm). This case is akin to neither Gemme nor Catucci:
Mr. Shea has held a gun license since 1998 without any reported incident. He took each of the firearm safety courses required to obtain his license; he has been able to renew it repeatedly. Several of the law enforcement officials and military veterans with weapons experience vouched for his character and stated that they found him to be a safe and responsible gun owner. The Stoneham Chief of Police would have issued Mr. Shea a license. Compare Ceely v. Firearms Licensing Review Board, 78 Mass.App.Ct. 1125, 2011 WL 445841 at *1 (Rule 1:28 decision) (2011) (where local police chief testified that even if Board found petitioner to be suitable, he would deny petitioner’s application for license due to his “history of incidents which demonstrate questionable judgment”). Further, Mr. Shea, now 49 years old, has lived a crime-free existence for the past 27 years.[9] He is employed as a Vice President of an engineering company. Compare id. (where petitioner, aside from his disqualifying conviction, was also involved in subsequent criminal activity and had long history of alcohol abuse).
Mr. Shea has proven, by clear and convincing evidence, that he is a suitable candidate to hold a firearms license in Massachusetts. The Board’s decision to deny Shea’s petition was unsupported by substantial evidence.
Arbitrary and Capricious
Mr. Shea further argues that the Board’s decision was arbitrary and capricious because it failed to employ established guidelines when making its decision. Neither General Laws c. 140, §131 nor G.L.c. 140, §130B define, nor have any guidelines been promulgated to define, the term “suitable person,” in the context of firearms licensing. See Firearms Records Bureau v. Simkin, 466 Mass. 168, 181 (2013). Thus, the court as well as firearms license applicants are afforded little guidance on what the Board considers important when making its suitability determination.
Without the help of established definitions or regulations as to what constitutes a “suitable” person for purposes of the firearms licensing laws, the court will look to the legislative purpose behind the statute’s enactment for guidance and the limited decisional law on the topic. Cf. Police Comm’r of Boston v. Robinson, 47 Mass.App.Ct. 767, 771 (1999) (one principal measure adopted in furtherance of firearm’s statute’s goal is firearms licensing regulations); Stavis, 2000 WL 1170090 at *5 (because, “suitable person” is not de *161 fined in statute, police chiefs have the authority to require applicants to comply with any other requirements reasonably related to legislature’s goal). The legislature enacted the firearms statute to safeguard the community from the harm that might arise from access to a deadly weapon by an irresponsible person. Ruggiero v. Police Comm’r of Boston, 18 Mass.App.Ct. 256, 259 (1984). Thus, it can be inferred that the Board must factor in whether an applicant has proven that he would be a responsible firearms owner when making its determination. Other courts that have reviewed the Board’s or a Police Chiefs suitability determination have found evidence of an applicant’s carelessness with his firearm, see, e.g., Catucci, 2010 WL 4072790, at *1; evidence that an applicant was abusive towards his wife, see e.g., Gemme, 2012 WL 6616936, at *2-3; evidence that an applicant has a history of substance abuse as well as questionable judgment, Ceely, 78 Mass.App.Ct. as *1; and habitual association with individuals who violate the law, see Stauis, 2000 WL 1170090 at *5, as relevant to the suitability determination.
“A decision is arbitrary and capricious when it lacks any rational explanation that reasonable persons might support.” Cambridge v. Civil Serv. Comm’n., 43 Mass.App.Ct. 300, 303 (1997); see Simkin, 466 Mass. at 181 (noting that a decision may be considered arbitrary and capricious where “no reasonable ground” exists to support it). Neither the fact that the Board found Mr. Shea to be less than forthcoming as to the details of his conviction nor the fact that it found that Shea did not take the requisite responsibility for his actions are reasonable grounds upon which to base its denial of his petition. While his prior assault conviction is relevant to the Board’s determination, the Board did not base its denial on the conviction itself. Instead, the Board’s reasoning centered on its dissatisfaction with Shea’s recantation of events from nearly three decades ago. To satisfy his burden, Mr. Shea was charged with proving to the Board, by clear and convincing evidence, that he is currently a suitable person to be a firearms license holder in Massachusetts. See Catucci, 2010 WL 4072790, at *1. He was not responsible for proving his innocence as to the alleged assault that occurred in 1987.
The Board found Mr. Shea’s apparent unwillingness to accept responsibility for his actions in 1987 as evidence that he would be an unsuitable firearms owner. Notwithstanding the fact that the great weight of the evidence in the record shows Mr. Shea not only to be a responsible person, but also a responsible firearms owner, his denial at the hearing that he committed any wrongdoing in 1987 does not lead one to rationally conclude that Shea, in 2014, would be an irresponsible or unsuitable gun owner.
Mr. Shea has presented the Board with sufficient evidence to prove that he is a suitable candidate for a firearms license. The Board’s reasons as to why it denied his petition were unreasonable. Its decision must, therefore, be reversed.
ORDER
For these reasons, Mr. Shea’s motion for judgment on the pleadings is ALLOWED, and the Board’s decision denying his petition is VACATED.
Judgment shall enter forthwith for Mr. Shea.

Mr. Shea’s local licensing authority is the Stoneham Police Department. See G.L.c. 140, §131(d) (identifying the local licensing authority as either a municipal police department or the State police, depending on the applicant’s jurisdiction).

Mr. Shea had previously held a license to carry firearms in the Commonwealth and in New Hampshire since 1998.
However, after the amendments to the Massachusetts firearms licensing laws (G.L.c. 140, §131(d)) both licenses were revoked.

No be eligible for such review, the petitioner’s disqualifying offense must have been punishable by an imprisonment term of two and a half years or less at the time the offense was committed; the offense must not have involved an assault and battery on a family member (as defined in c. 209A); and the offense must have had a date of conviction at least five years prior to the petition date. G.L.c. 140, §130B(b).

As an initial matter, Mr. Shea requested that he be afforded a new hearing, as the Board failed to inform him, on the record, that he was entitled to request a new date on which he could have his hearing in front of the full panel of the Board. He contends that the Board has customarily notified applicants of this right at hearings where the full panel of the Board was not present, and indeed, in a previous case, the Board concluded that failure to do so entitled the applicant to a new hearing. Findings and Conclusions of the Firearms Licensing Review Board (Feb. 24, 2012). The Board argued that its actions were in complete accord with its established requirements, set forth in G.L.c. 140, §130B. It contends that the only requirement the statute sets forth is that two-thirds of the members of the Board present at an applicant’s hearing must find him suitable in order to restore the applicant’s rights. The statute leaves the timing and venue of such hearings to the discretion of the Board and does not specifically require that a certain number of Board members be present at the hearings. SeeG.L.c. 140, §130B(d)-(e). Because two-thirds of the five members of the Board who were present at Mr. Shea’s hearing deemed him an unsuitable candidate, the Board contends it complied with the statute at his hearing and in its decision when it denied Mr. Shea’s petition. The Board, however, openly and specifically adopted a new procedure when it began its practice of notifying applicants of the right to be heard in front of the full panel of the Board. See G.L.c. 30A, §14(7)(d) (warranting reversal of Board’s decision based upon unlawful procedure). It would be manifestly unfair to deny Mr. Shea a right that the Board has afforded to other applicants in the past. Thus, as it failed to inform Mr. Shea of such a right on the record at his hearing, he would be entitled, based on this procedural error, to a new hearing in front of all six members of the Board. However, because the court is allowing Mr. Shea’s motion on other grounds and reversing the Board’s decision, a new hearing is unnecessary. In this case, the court’s decision to reverse the Board decision is not based on the Board’s failure to follow its own procedures.

Question 6 on the application asked “Have you ever been convicted of a crime punishable by incarceration by more than one (1) year?” See Administrative Record, p. 8. Question 7 on the application asked, in relevant part, “In any state or federal jurisdiction have you ever been convicted as an adult or adjudicated a youthful offender or delinquent child for the *162 commission of (a) a felony: (b) a misdemeanor punishable by imprisonment for more than two years ...” See id.

See G.L.c. 140, §131(d)(i)(b).

Mr. Shea had also held a license to carry firearms in New Hampshire, which was revoked only after the Massachusetts firearms laws had been amended.

Indeed, this court doubts most attorneys would know the answer.

To afford further perspective, the offense occurred when Ronald Reagan was President of the United States.